# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 61098-1-II |
| Respondent, | |
| v. | |
| GREGORY RYNTH STEELE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Gregory Steele appeals the trial court's amended restitution order following his guilty plea for vehicular homicide that resulted in the death of Levi Moser.

At a second restitution hearing, Moser's mother Cara Swanson[1] testified that she purchased a burial plot for Moser that was large enough for the internment of two people. She also testified that her grief prevented her from working and caused her to be terminated from her job. She sought nine months of lost wages. The trial court ordered Steele to pay (1) approximately $28,000 for the burial plot, and (2) approximately $60,000 in Swanson's lost wages due to her inability to work for nine months.

---

[1] The record identifies Moser's mother as both Cara Moser and Cara Swanson. We refer to her as Swanson for clarity. No disrespect is intended.

We hold that the trial court did not abuse its discretion in awarding restitution for Swanson's burial plot expenses and for Swanson's lost wages. Accordingly, we affirm the trial court's amended restitution order.

FACTS

In April 2023, Steele caused a head-on collision while intoxicated that killed 20-year-old Moser. In February 2024, Steele pleaded guilty to vehicular homicide while operating a motor vehicle under the influence. The trial court initially ordered Steele to pay $23,245.95 in restitution, $8,880.20 of which was to be paid to Swanson. The order stated, "This order may be amended at a later date as disclosure of costs is ongoing." Clerk's Papers at 72.

The State subsequently filed a motion for additional restitution totaling $91,997.77. The State requested reimbursement for the purchase of a large burial plot at a cemetery for $31,279.18, including finance charges. The plot could hold two interred bodies, but the State argued that it was intended only for Moser.

The State also asserted that Swanson had been out of work since Moser's death and requested $60,058.86 in lost wages. Swanson provided a W-2 form which showed that her income was $6,673.21 per month in 2023 before Moser's death.

The trial court held a hearing on restitution in October 2024. Swanson testified that she purchased a cemetery plot for Moser, which was a large rock overlooking a water source. The invoice stated that she purchased two internment rights. Swanson explained that the place she selected was so large that there was room for the internment of another person in addition to Moser. However, only her son was buried there. There would be additional charges for another internment.

Regarding lost wages, Swanson stated that she was a surgical technician before Moser's death. Swanson testified that she had not been able to return to work after Moser's death. She was seeking reimbursement for lost wages for the nine months in 2023 after Moser's death.

Swanson stated that after Moser's death she was diagnosed with severe depression and anxiety, and she had been "seeking help for all of that." Rep. of Proc. (RP) at 29. She explained why she could not go back to work: "I deal with people's lives. I actually -- I assist doctors in surgery and I take patient safety extremely serious. And if I'm not okay to assist my doctors in surgery, I can't go back." RP at 27. Swanson said that her doctor's opinion was that she "wasn't okay to go back to work," and the doctor wrote her a note. RP at 28. But the record does not contain any documentation or testimony from a medical provider regarding Swanson's inability to work for nine months after Moser's death.

Swanson's employer allowed her three months unpaid medical leave and six months unpaid bereavement leave. However, her employer eventually terminated her earlier because she could not return to work as soon as they wanted.

The trial court granted the State's motion for additional restitution. The trial court ordered Steele to pay $31,279.18 for the burial plot and $60,058.86 for Swanson's lost wages.

Steele appeals the trial court's order awarding Swanson additional restitution.

ANALYSIS

A.    LEGAL PRINCIPLES

The trial court's authority to order restitution derives from statute. *State v. Gray*, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012). RCW 9.94A.753(5) states, "Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property" absent extraordinary circumstances. RCW 9.94A.753(3)(a) states,

"[R]estitution . . . shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." RCW 9.94A.753(3)(a) prohibits restitution as damages for mental anguish or pain and suffering. Restitution can be based on funds a victim – even if not the crime's immediate victim – expends as a result of the crime. *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). RCW 9.94A.753 gives trial courts broad power to order restitution. *Gray*, 174 Wn.2d at 925.

Restitution can be ordered only for losses that are causally connected to the defendant's offense. *State v. Schultz*, 31 Wn. App. 2d 235, 251, 548 P.3d 559, *review denied*, 3 Wn.3d 1022 (2024). The State must show that but for the crime, the losses would not have occurred. *Id.*

If a defendant disputes the amount of restitution requested, the trial court must hold a hearing to determine the amount to be awarded. *Id.* at 252 (citing RCW 9.94A.753(1)). The State bears the burden of proving the amount of restitution by a preponderance of the evidence. *Schultz*, 31 Wn. App. 2d at 252. Evidence supporting a restitution order must provide a reasonable basis for estimating the loss. *State v. Deskins*, 180 Wn.2d 68, 82, 322 P.3d 780 (2014). "Courts may rely on a broad range of evidence – including hearsay – because the rules of evidence do not apply to sentencing hearings." *Id.* at 83. However, conjecture and speculation are insufficient to estimate a loss. *Id.* at 82-83.

We review a trial court's restitution order for an abuse of discretion. *Id.* at 77. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

B.    BURIAL PLOT

Steele argues that the trial court erred in awarding the full cost of the burial plot Swanson purchased in restitution because the plot purchased allowed for two internments. We disagree.

4

Restitution under RCW 9.94A.753(3)(a) clearly includes burial expenses. But Steele argues that the cost associated with the second internment right is not causally related to his crime.

Here, Swanson testified that she selected a large plot to bury Moser's remains, which included a rock overlooking a water source. The plot was large enough to inter two people, but Swanson testified that she purchased to plot to bury only Moser. And she stated that she would have to pay additional charges to inter a second person on the plot.

Steele does not challenge Swanson's ability to select an appropriate burial site for her son. Swanson chose a large, special burial plot. The record does not contain any indication that Swanson chose that plot so a second person could be interred there. And there would be additional charges to inter a second person. If Steele had not committed his crime, it would have been unnecessary for Swanson to purchase the burial plot. Therefore, a preponderance of the evidence supports that Steele's crime caused Swanson to incur the expense for the burial plot.

Accordingly, we hold that the trial court did not abuse its discretion when it awarded additional restitution for Swanson's purchase of a burial plot.

C.     LOST WAGES

Steele argues that the State failed to establish a causal connection between Swanson's lost wages and Moser's death.[2] We disagree.

As noted above, RCW 9.94A.753(3)(a) allows restitution for "lost wages resulting from injury." "[O]ur courts have recognized that emotional distress may result in the tangible lost wages restitution is designed to reimburse." *Schultz*, 31 Wn. App. 2d at 252; *see also State v. Gonce*, 200 Wn. App. 847, 860, 403 P.3d 918 (2017) (allowing restitution for lost wages caused

---

[2] Steele does not argue that Swanson is not a "victim" and therefore cannot receive restitution.

by emotional distress). And the court in Schultz held that the parents of a deceased victim can receive restitution for lost wages. 31 Wn. App. 2d at 251-52. But even if a person incurs lost wages, the State must show that the injury caused those lost wages. *Id.* at 251.

Here, Swanson testified that she had not been able to return to work after Moser's death. She stated that she was diagnosed with severe depression and anxiety. She explained that it was not safe to return to her surgical technician position in her condition because of patient safety. Swanson said that her doctor's opinion was that she was not okay to return to work, and the doctor wrote her a note. Her employer awarded her three months of medical leave and six months of bereavement leave. But she was not paid during her leave, meaning that she was losing wages while off work. And her employer eventually terminated her before the leave expired, after which she obviously was losing wages because she no longer was employed.

Steele argues that Swanson failed to provide any medical testimony or documentation that she had an "injury" that prevented her from working. However, Swanson testified that she was diagnosed with depression and anxiety and that her doctor's opinion was that she should not work. The trial court can rely on hearsay in a restitution hearing. *Deskins*, 180 Wn.2d at 83. And Swanson provided a plausible reason why her depression and anxiety prevented her from working – patient safety.

Steele also argues that Swanson failed to provide any medical testimony or documentation regarding the length of time she could not work. However, Swanson's employer allowed her three months of medical leave and six months of bereavement leave. The trial court could infer from this evidence that nine months was a reasonable time for Swanson to remain off work.

Finally, Steele argues that RCW 9.94A.753(3)(a) precludes restitution for mental anguish. However, the court in *Gonce* expressly distinguished "[i]ntangible damages for mental anguish and pain and suffering," which are prohibited under RCW 9.94A.753(3)(a), from lost wages "incurred as a result of emotional distress" that are "objective and easily ascertainable." 200 Wn. App. at 860. The trial court ordered restitution not for Swanson's mental anguish, but for her lost wages caused by that mental anguish.

Trial courts have broad power to order restitution under RCW 9.94A.753. *Gray*, 174 Wn.2d at 925. And the standard of review is abuse of discretion. *Deskins*, 180 Wn.2d at 77. Although the State could have presented stronger evidence to support the wage loss claim, we hold that the trial court did not abuse its discretion in allowing restitution for Swanson's lost wages.

## CONCLUSION

We affirm the trial court's amended restitution order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

CHE, J.

7